Matthew E. Frisch, Esq. (077482014)
**PASHMAN STEIN WALDER HAYDEN, P.C.**
Court Plaza South, East Wing
21 Main Street, Suite 200
Hackensack, NJ 07601
(201) 488-8200
mfrisch@pashmanstein.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRAD MILLER,<br><br>Plaintiff,<br><br>v.<br><br>MARCELLO FOLLANO, LATE STAGE MANAGEMENT, LLC; LATE STAGE MANAGEMENT I, LLC; LATE STAGE MANAGEMENT, II, LLC; LATE STAGE INVESTMENT FUND VIII, LLC,<br><br>Defendants. | Case No. 2:26-cv-11316 (LMG) (SDA)<br><br>Hon. Leo M. Gordon, U.S.D.J.<br>Hon. Stacey D. Adams, U.S.M.J.<br><br>**Motion Day: November 16, 2026** |

**DECLARATION OF JOHN E. LAWLOR, ESQ.**

John E. Lawlor, Esq., of full age, declares the following pursuant to 28 U.S.C. §1746:

1. I am an attorney admitted to practice law in the State of New York and before the Eastern and Southern Districts of New York. I am not admitted to practice law in the State of New Jersey or before the District of New Jersey. I am counsel to Defendant Marcello Follano and certain affiliated Late Stage entities in various matters, including *Evangelista v. Late Stage Asset Management, et al.*, Docket No. 24-05292, pending in the Eastern District of New York and *Carr v. Late Stage Asset Management, LLC*, Docket No. ESX-L-1987-26, pending in the Superior Court

of New Jersey where I am admitted *pro hac vice.* I make this declaration on personal knowledge in opposition to Plaintiff's Motion for Default Judgment. [ECF No. 12].

2. Having been actively engaged in representing Mr. Follano in at least two other actions, on or about October 1, 2026, Mr. Follano brought the instant action to my attention.

3. Because I am not admitted in New Jersey or the District of New Jersey, I attempted to arrange for Dillon McGuire of Pashman Stein Walder Hayden, P.C., a member of the bar of this Court, to serve as local counsel and to file Mr. Follano's response to the Complaint. From approximately October 1, 2026, through at least October 15, 2026, however, Mr. McGuire was engaged in a criminal jury trial in Ocean County Superior Court (State v. Ilan Schachnow), which limited his availability. We were unable to connect before Mr. Follano's response deadline.

4. On October 14, 2026, I sent a letter by email to each of Plaintiff's five attorneys of record, Joseph A. Ruta, Gregory Byrnes, F. Skip Sugarman, Sophie Degani, and Jadyn Taylor Dixon. A true and correct copy of that letter is attached hereto as **Exhibit A**.

5. In that letter, I advised Plaintiff's counsel that my office represents Mr. Follano; that I am not admitted in New Jersey; that local counsel was engaged in a jury trial; that I was writing to preserve Mr. Follano's rights and give fair notice of his intentions; and that, if Plaintiff proceeded in this forum, I would move for admission *pro hac vice* and file a motion to compel arbitration.

6. The letter set out in detail Mr. Follano's intention to move under 9 U.S.C. §§ 3-4 to stay this action and compel arbitration of Plaintiff's claims before the American Arbitration Association pursuant to Article XIV of the Limited Liability Company Operating Agreement of Fund VIII. It specified arbitration in New York County and, alternatively, transfer to the Southern

District of New York for that purpose. The letter expressly reserved, and did not waive, all other rights, defenses, and objections.

7. The letter asked Plaintiff's counsel to state in writing by October 23, 2026, whether Plaintiff would consent to arbitration and stipulate to a stay. If Plaintiff agreed, I offered to prepare a proposed stipulation and order. Otherwise, I offered to meet and confer and stated that, absent resolution, Mr. Follano would proceed with the motion.

8. Plaintiff's counsel failed to respond to the letter. The following day, they requested that the Clerk of this Court enter default against Mr. Follano. [ECF No. 11]. I have reviewed Plaintiff's request for entry of default and their motion for default judgment. Neither mentions my October 14 letter.

9. At no time before the Clerk entered default on October 19, 2026, did Plaintiff's counsel inform me that Plaintiff intended to request the entry of default.

10. Thereafter, Mr. McGuire of Pashman Stein put me in touch with his partner Matthew Frisch, who agreed to assist me with this matter as local counsel for Mr. Follano going forward.

11. The Pashman Stein firm was retained on October 22, 2026. At that time, I was traveling in Europe on a pre-planned, pre-paid vacation that began on October 16 and continued through November 2, 2026. During that period, my availability to confer with Mr. Frisch and assist in preparing Mr. Follano's response was limited.

12. I understand that on October 29, 2026, Mr. Frisch spoke with Plaintiff's counsel, Mr. Byrnes, and requested that Plaintiff either consent to vacate the default and provide two weeks to respond to the complaint, or in the alternative, consent to a brief adjournment of the motion for default judgment. Mr. Frisch followed up that call with an email to Mr. Byrnes reiterating the

request and seeking a quick response. A true and correct copy of the email is attached hereto as **Exhibit B**. My understanding is that neither Mr. Byrnes nor any other attorney representing Plaintiff ever responded to Mr. Frisch.

13. On November 3, 2026, Mr. Frisch filed a Notice of Appearance and filed a letter requesting an adjournment of the Motion for Default. [ECF Nos. 20, 21].

14. On November 4, 2026, the Court requested a Teams Video conference with counsel to address the adjournment request. Plaintiff confirmed that they were unwilling to consent to an adjournment of the motion, and the Court set a short briefing schedule for Defendant to move for an extension of time.

15. Thereafter, counsel for the parties met and conferred. Mr. Follano's counsel explained that they intended not only to file an opposition to the motion for default judgment, but also to cross-move to vacate default and compel arbitration. Plaintiff's counsel refused to adjourn the motion return date but consented to providing Defendant additional time to file an opposition only. They refused to consent to Mr. Follano filing the related cross-motions.

16. On November 5, 2026, Mr. Frisch wrote to the Court to report the parties' agreed schedule: Mr. Follano will file his opposition to Plaintiff's Motion for a Default Judgment by November 12, 2026; Plaintiff will file their reply by November 13, 2026; and the motion will remain returnable on November 16, 2026. [ECF No. 28; *see also* ECF No. 30 (Text Order endorsing same)].

17. Mr. Follano asked that I continue representing him because of my familiarity with his business and the other similar lawsuits in which I represent him. Arrangements for retaining local counsel were complicated due to my travel and Mr. McGuire's criminal jury trial. Mr. Follano

has authorized me to state that he intends to defend this action, pursue arbitration and, failing that, vigorously pursue all available defenses.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

John E. Lawlor

Dated: November 12, 2026

# Exhibit A

**JOHN E. LAWLOR, ESQ.**
ATTORNEY AT LAW

55 Jericho Tpke., Ste. 205
Jericho, N.Y. 11753

(516) 248-7700
(516) 662-3054 (cell)
(516) 742-7675 (fax)
E-Mail: JLawlor@johnelawlor.com

October 14, 2026

**VIA EMAIL**

Joseph A. Ruta, Esq.
Gregory Byrnes, Esq.
ANDERSON LAW
104 West 27th Street, 11th Floor
New York, New York 10001
jruta@lawnynj.com | Gregory@andersonlaw.nyc

F. Skip Sugarman, Esq.
Sophie Degani, Esq.
Jadyn Taylor Dixon, Esq.
SUGARMAN LAW, LLP
154 Krog Street NE, Suite 190
Atlanta, Georgia 30307
skip@sugarman-law.com | sophie@sugarman-law.com | jadyn@sugarman-law.com

**Re:** ***Miller v. Follano, et al.*, Civil Action No. 2:26-cv-11316-LMG-SDA (D.N.J.)**
**Notice of Intent to Move to Compel Arbitration and Stay Proceedings**

Dear Counsel:

This firm represents or will represent defendant Marcello Follano in the above-referenced action.[1] We write, in advance of any motion practice, to advise you that Mr. Follano intends to move to compel arbitration of all claims asserted against him in the Complaint (ECF No. 1) and to stay this action pending arbitration pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (the "FAA"). The basis for the motion is set out below. In

[1] Note that I am not admitted in New Jersey but that local counsel is tied up in jury selection in another matter. I am writing to preserve my client's rights and to put you on fair notice of Defendant's intentions. If you decide to proceed in this forum, I will of course move to be admitted pro hac vice and make the motion as outlined herein.

light of the plain terms of the agreements on which Plaintiff's own claims rest, we ask that Plaintiff consent to proceed in arbitration so that the parties and the Court may avoid the time and expense of unnecessary motion practice.

## I. Plaintiff Agreed to Arbitrate Any Dispute Relating to His Fund VIII Investments

The agreement to arbitrate is established by Plaintiff's own pleading. The Complaint alleges that each of Mr. Miller's investments was made through Late Stage Investment Fund VIII, LLC ("Fund VIII"), and that, to invest, he executed a subscription package for the Fund comprising, among other things, a private placement memorandum, a subscription booklet, and the Fund's limited liability company operating agreement. (Compl. ¶¶ 28, 40.) Plaintiff attaches a representative Fund VIII Subscription Booklet as Exhibit A, alleges that his subscription booklets for each investment are "substantively identical," and defines the operating and subscription agreements contained in those booklets as the "Agreements" on which his claims are premised. (*Id.* ¶ 33 & n.1; ECF No. 1-1.)

Those Agreements contain a broad and mandatory arbitration provision. Article XIV of the Limited Liability Company Operating Agreement of Fund VIII (the "Operating Agreement") governs "any claim, dispute or controversy arising under, out of or relating to this Agreement or any Series Designation or any breach or purported breach thereof" (a "Dispute"). (ECF No. 1-1 at 93, § 14.1.) Section 14.3 provides that "at the request of either Party to the Dispute, the Dispute shall be referred to and finally resolved by binding arbitration," administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules before a three-member panel, with hearings to be held in New York County, New York. (*Id.* at 93–94, § 14.3(a), (c).) Those procedures are "the sole and exclusive procedures for the resolution of Disputes" (*id.* at 94, § 14.4), the parties "expressly invoke[d] the provisions of the Federal Arbitration Act" (*id.*, § 14.3(d)), and the parties knowingly and voluntarily waived any right to a jury trial (*id.* at 95, § 14.9).

Plaintiff assented to those terms with each investment. The Signature Page Mr. Miller executed "constitutes the signature page for" both the Subscription Agreement and the Operating Agreement, and provides that "[e]xecution of this Signature Page constitutes execution of . . . each of the aforementioned documents." (*Id.* at 108; *see also id.* at 98, § 15.15.) In the Subscription Agreement, Plaintiff "adopt[ed], accept[ed] and agree[d] to be bound by the terms and conditions of the Operating Agreement," and expressly "agree[d] to resolve all controversies in accordance with the provisions set forth in the Operating Agreement." (*Id.* at 99, ¶ 3; *id.* at 107, ¶ 15.)

## II. Each of Plaintiff's Claims Falls Within the Arbitration Provision

Each of the Complaint's ten counts arises out of or relates to Plaintiff's subscriptions for Series Interests in Fund VIII and the management of those investments. Count VI expressly seeks to enforce the "Agreements" against all Defendants. (Compl. ¶¶ 157–163.) The alleged misrepresentations underlying Counts I through III are alleged to have been communicated "through offering materials, subscription documents, [and] Acceptance Letters." (*Id.* ¶¶ 81, 100,

117.) The breach of fiduciary duty claim rests on Late Stage's role "[a]s manager of Fund VIII" and the duties it allegedly owed Plaintiff "as a member of Fund VIII." (*Id.* ¶ 185.) The conversion, unjust enrichment, and constructive trust counts, and the requests for delivery of Pre-IPO Shares and an accounting, all concern the application of Plaintiff's capital contributions to the Fund and the Fund's obligations under the Agreements. (*Id.* ¶¶ 132–145, 164–183 & Prayer for Relief ¶¶ (d)–(e).)

That several counts sound in fraud, or that Count V is pleaded under the New Jersey Uniform Securities Law, does not remove them from the arbitration provision. A challenge to the validity of the contract as a whole, including a claim that the investor was fraudulently induced to invest, is for the arbitrators, not the court. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). Nor may state law exempt particular categories of claims from arbitration. *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532–33 (2012) (per curiam).

Moreover, by agreeing to arbitrate under the AAA Commercial Arbitration Rules, the parties clearly and unmistakably delegated questions of arbitrability, including any dispute over the scope of the arbitration provision, to the arbitrators. *See* AAA Commercial Arbitration Rule R-7(a); *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100 (3d Cir. 2020). Where the parties have delegated arbitrability, a court must respect that delegation. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019).

## III. Mr. Follano Is Entitled to Enforce the Arbitration Provision

That Mr. Follano did not sign the Agreements in his individual capacity does not prevent him from enforcing the arbitration provision. A non-signatory may enforce an arbitration agreement under traditional principles of state contract law, including agency, equitable estoppel, and third-party beneficiary theories. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *White v. Sunoco, Inc.*, 870 F.3d 257, 262 (3d Cir. 2017). Each of those principles applies here.

*First*, Plaintiff is equitably estopped from avoiding arbitration. The Agreements are governed by Delaware law. (ECF No. 1-1 at 95, § 14.7; *id.* at 107, ¶ 16.) Under Delaware law, a non-signatory may compel a signatory to arbitrate where the signatory relies on the terms of the agreement in asserting its claims against the non-signatory, or where the signatory alleges substantially interdependent and concerted misconduct by the non-signatory and one or more signatories to the agreement. *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, 2006 WL 2473665, at *5 (Del. Ch. Aug. 22, 2006). Both conditions are met. Plaintiff sues Mr. Follano for breach of the very Agreements that contain the arbitration provision (Compl. ¶¶ 157–163), and every count is pleaded against Mr. Follano jointly with Fund VIII and its manager, which the Complaint collectively defines as "Defendants" or "Late Stage" and alleges acted "through Mr. Follano." (*Id.* at 2; *id.* ¶¶ 77, 98, 115.) Plaintiff cannot invoke the Agreements against Mr. Follano while disavowing the dispute resolution procedure to which he agreed in those same documents.

*Second*, Mr. Follano may invoke the arbitration provision as an agent of the signatory entities. The Third Circuit has long held that "[b]ecause a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993). Every act the Complaint attributes to Mr. Follano is alleged to have been taken in his capacity as founder, Managing Partner, and President of Late Stage and as manager of Fund VIII. (Compl. ¶¶ 4, 69–72, 78, 86, 106, 137.)

*Third*, Plaintiff alleges that Mr. Follano so dominated the signatory entities that they "had no separate existence and operated as his alter ego and instrumentality." (*Id.* ¶ 68.) Having pleaded that Mr. Follano and the contracting entities are one and the same, Plaintiff cannot treat him as a stranger to those entities' agreements. The Operating Agreement likewise contemplates that the managers, members, and officers of the Manager are protected by its terms. (ECF No. 1-1 at 59 (definition of "Indemnified Party"); *id.* at 97, § 15.10.)

## IV. The Pre-Arbitration Negotiation Provision Does Not Bar Arbitration

Section 14.2 of the Operating Agreement provides for a period of good-faith negotiation following delivery of a written Dispute Notice. (ECF No. 1-1 at 93, § 14.2.) Plaintiff did not serve a Dispute Notice before commencing this action. Plaintiff's own failure to follow the agreed procedure is no basis to keep his claims in court, and in any event, whether a contractual precondition to arbitration has been satisfied is a procedural question presumptively for the arbitrators. *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34–35 (2014); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002). Mr. Follano remains prepared to participate in good faith in the negotiation process contemplated by Section 14.2.

## V. The Relief Mr. Follano Will Seek

Because the Agreements are attached to and relied upon in the Complaint, the motion can be decided on the face of the pleadings without discovery. *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). Where, as here, a party requests a stay pending arbitration, Section 3 of the FAA requires the Court to stay the action. *Smith v. Spizzirri*, 601 U.S. 472 (2024). The Operating Agreement provides that arbitration hearings are to take place in New York County and that judicial proceedings under Article XIV are to be instituted in the state or federal courts sitting in New York County. (ECF No. 1-1 at 94–95, §§ 14.3(c), 14.7.) Mr. Follano will therefore move (i) to stay this action pursuant to 9 U.S.C. § 3, and (ii) to compel arbitration before the AAA in New York County pursuant to 9 U.S.C. § 4 or, in the alternative, to transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a) for that purpose. *See Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974); *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49 (2013).

## VI. Request for Consent

Please let us know by October 23, 2026 whether Plaintiff will stipulate to (i) submit his claims against Mr. Follano to arbitration in accordance with Article XIV of the Operating Agreement, and (ii) stay this action pending the outcome of that arbitration. If Plaintiff agrees, we will prepare a proposed stipulation and order for submission to the Court. If Plaintiff does not agree, we are available to meet and confer at your convenience, and absent resolution, Mr. Follano will proceed with the motion in accordance with the Federal Rules of Civil Procedure, the Local Civil Rules, and the Court's individual practices.

This letter is sent without prejudice to, and with full reservation of, all of Mr. Follano's rights, defenses, and objections, including his right to arbitrate and all defenses available under Federal Rule of Civil Procedure 12, none of which is waived.

Very truly yours,

s/ John E. Lawlor
**JOHN E. LAWLOR, ESQ.**

cc: Marcello Follano (via email)

# Exhibit B

**From:** Matthew E. Frisch
**To:** "gregory@andersonlaw.nyc"
**Subject:** Miller v. Follano, et al. AND Verska, et al. v. Follano
**Date:** Thursday, October 29, 2026 12:53:00 PM
**Attachments:** image001.png

---

Hi Gregory,

Thank you for taking the time to speak with me a few moments ago. As requested, below is my contact information.

As discussed on our call, my firm has just been retained to represent the defendants in both of the above-referenced matters pending in the DNJ. We are now aware that motions for default judgment have been filed in both cases.

My requests for your clients' and co-counsel's consideration are:

1. Will you consent to vacate the defaults entered and agree to provide a couple of weeks for us to file a response?
2. In the alternative, if your clients are not willing to consent to vacating default, we ask that you please grant us the courtesy of adjourning the 2 default motions currently pending. We are new to these cases and need some time to familiarize ourselves with both files.

Thank you for aiming to get us a response by today if possible.

Matt

**Matthew E. Frisch**
**Partner**
**Pashman Stein Walder Hayden, P.C.**
201.270.4918 Direct
mfrisch@pashmanstein.com
Court Plaza South, 21 Main Street, Suite 200, Hackensack, NJ 07601
201.488.8200 | 201.488.5556 Fax | **pashmanstein.com**
PashmanStein WalderHayden
A Professional Corporation