**Joseph A. Ruta** (N.J. Bar No. *049481992*)
Gregory Byrnes (N.J. Bar No. 316122020)
ANDERSON LAW
104 W 27th Street, 11th Floor
New York, NY 10001
jruta@lawnynj.com
Gregory@andersonlaw.nyc
*Local Counsel for Plaintiff*

F. Skip Sugarman (pro hac vice)
skip@sugarman-law.com
Sophie Degani (pro hac vice)
sophie@sugarman-law.com
Jadyn Taylor Dixon (pro hac vice forthcoming)
jadyn@sugarman-law.com
SUGARMAN LAW, LLP
154 Krog Street NE, Ste. 190
Atlanta, GA 30307
(404) 495-4811
*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

| | |
|---|---|
| BRAD MILLER,<br><br>Plaintiff,<br><br>v.<br><br>MARCELLO FOLLANO, LATE STAGE MANAGEMENT, LLC; LATE STAGE MANAGEMENT I, LLC; LATE STAGE MANAGEMENT, II, LLC; LATE STAGE INVESTMENT FUND VIII, LLC,<br><br>Defendants. | CIVIL ACTION NO. 2:26-cv-11316<br><br>Motion Day: November 16, 2026 |

## TABLE OF CONTENTS

**INTRODUCTION…………………………………………………………………..1**

**ARGUMENT AND CITATION TO AUTHORITY…………………………...2**

**A. Defendants' Default Was Willful and Culpable………………….....……3**

**B. Plaintiff Would Be Prejudiced by Setting Aside the Defaults…….……7**

**C. Defendants Have Failed to Establish a Meritorious Defense………...9**

**CONCLUSION………………………………………………………………15**

**Cases**

Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557 (D.N.J. 2002) ....... 14
Budget Blinds, Inc. v. White, 536 F.3d 244 (3d Cir. 2008) ....... 2
Cf. In re Rockefeller Ctr. Props., 311 F.3d 198 (3d Cir. 2002) ....... 12
Chamberlain v. Giampapa, 210 F.3d 154 (3d Cir. 2000) ....... 3
Derek Smith Law Grp., PLLC v. Carson, No. 25-1238, 2025 WL 3296301 (E.D. Pa. Nov. 26, 2025) ....... passim
Farnese v. Bagnasco, 687 F.2d 761 (3d Cir. 1982) ....... 6
Feliciano v. Reliant Tooling Co., 691 F.2d 653 (3d Cir. 1982) ....... 7
Hritz v. Woma Corp., 732 F.2d 1178 (3d Cir. 1984) ....... 2, 3, 7
Marks v. Struble, 347 F.Supp.2d 136 (D.N.J. 2004) ....... 11
Mike Rosen & Assocs. v. Omega Builders, Ltd., 940 F. Supp. 115 (E.D. Pa. 1996) ....... 13
Mrs. Ressler's Food Prods. v. KZY Logistics LLC, 675 F. App'x 136 (3d Cir. 2017) ....... 3, 10
Registrar & Transfer Co. v. Dir., Div. of Tax'n, Dep't of Treasury, 166 N.J. Super. 75 (App. Div. 1979) ....... 13
Sadis & Goldberg, LLP v. Banerjee, No. 19-1682, 2020 WL 4350238 (W.D. Pa. July 28, 2020) ....... 8
Sturgeon v. Pharmerica Corp., 438 F. Supp. 3d 246 (E.D. Pa. 2020) ....... 5
Sunoco, Inc. (R & M) v. Glob. Recycling & Demolition, LLC, 300 F.R.D. 253 (E.D. Pa. 2014) ....... 10
U.S. v. $55,518.05 in U.S. Currency, 728 F.2d 192 (3d Cir. 1984) ....... 9, 10, 15

**Statutes**

6 Del. C. § 18-1101 ....... 14

**Rules**

Fed. R. Civ. P. 8 ....... 13
Fed. R. Evid. 201 ....... 5

# PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

## I. INTRODUCTION

Defendants' default is intentional. It is part of an overall strategy to allow Defendants to keep for themselves the millions of dollars in Space X stock that belong to Plaintiff, among many other investors. Plaintiff invested $3.3 million with Defendants for specific pre-IPO investments, including shares in Space X. Mr. Follano personally assured Plaintiff, repeatedly, that his investments were secure—that his shares were "all still there." The shares were not—Defendants initially took the position that Plaintiff was entitled to dramatically fewer shares than Defendants' own records promised, *never* delivered to Plaintiff any missing shares or their value, and have refused to account for what has since become of Plaintiff's substantial investments.

Mr. Follano's assurances to Mr. Miller were the prelude to what quickly became deafening silence. As Plaintiff learned of the dozens of investors who were suffering similar fates at the hands of Defendants nationwide, he began pressing for more answers, but Mr. Follano's responses quickly grew scarcer before stopping entirely. When Plaintiff filed this action, unsurprisingly, Defendants did not respond at all. Defendants' default was not the product of confusion or inadvertence. Mr. Follano knew of this lawsuit, had counsel, and let the deadline pass, just as he let Plaintiff's earlier demands go unanswered.

What Defendants seek from this Court is nothing less than authorization of their delay tactics. After defaulting, they appeared not to defend this case on its merits, but simply to postpone the day of reckoning. Their opposition confirms this strategy—it offers no defense to the central fact of this case—that Defendants took Plaintiff's money, promised him ownership over specific pre-IPO shares, and delivered neither. Defendants cannot meet the standard for avoiding default judgment. Their default was willful, they have no meritorious defenses to Plaintiff's claims, and any continued delay threatens Plaintiff with the permanent loss of his investment and of any ability to trace where it went. For the reasons set forth below, the Court should enter default judgment against Defendants.

## II. ARGUMENT AND CITATION TO AUTHORITY

In their response, Defendants rely on general propositions to avoid default judgment. Although it is true that default judgments are generally disfavored, courts "cannot apply this presumption against default judgments if doing so would be inconsistent with the Federal Rules of Civil Procedure or . . . case law interpreting these Rules." Budget Blinds, Inc. v. White, 536 F.3d 244, 258 (3d Cir. 2008). The preference for resolving disputes on their merits is not absolute, however, and is appropriately disregarded where a defendant's default is the product of willful or strategic conduct rather than inadvertence. Hritz v. Woma Corp., 732 F.2d 1178, 1184 (3d Cir. 1984) (no abuse of discretion to enter default

judgment against party who "callously disregarded repeated notice of judicial proceeding"); Derek Smith Law Grp., PLLC v. Carson, No. 25-1238, 2025 WL 3296301, at *5-6 (E.D. Pa. Nov. 26, 2025).

The facts of this case supply the Court with the precise circumstances for which the default rule was written, as all of the factors relevant to the inquiry are easily established here: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct" taken willfully and in bad faith. Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).

**A. Defendants' Defaults Were Willful and Culpable.**

Defendants' behavior in this case illustrates willful and culpable default. The Third Circuit has recognized that culpable conduct is established through the "willfulness" or "bad faith" of a nonresponding party. Hritz, 732 F.2d at 1182-1183. Although mere negligence is insufficient, "[r]eckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard." Id. at 1183. Moreover, culpability can be found where a defendant merely fails to seek an extension or adequately explain their non-responsiveness. Mrs. Ressler's Food Prods. v. KZY Logistics LLC, 675 F. App'x 136, 142 (3d Cir. 2017).

Courts may also consider a defendant's prior litigation conduct in evaluating whether his failure to respond was willful. Derek Smith Law Grp., 2025 WL 3296301, at *6. In Derek Smith Law Grp., the defendant sought to vacate a default judgment, arguing that his failure to respond resulted from difficulty retaining counsel. The court rejected that explanation, noting the defendant's extensive history of misconduct in other proceedings, including a number of cases in which he had been sanctioned for his conduct or otherwise engaged in "complete nonresponsiveness." Id. Considering the defendant's prior conduct alongside his failure to defend the pending action, the court found a pattern of obstructive conduct supporting culpability and declined to vacate the judgment. Id.

Here, similarly, Defendants attribute their failure to respond to difficulties securing local counsel, and rely on John Lawlor's October 14, 2026, letter as evidence of their intention to defend. (Opp. at 9-10.) This position ignores both their history of non-responsiveness and the substantial periods of delay in this case.

Defendants' disregard for their obligations began well before this lawsuit. As alleged in the Complaint, Plaintiff repeatedly sought information concerning his investments, only to receive assurances from Mr. Follano that his account access would be restored, before Mr. Follano stopped responding altogether. (Compl. ¶¶ 53–64.) Indeed, Defendants have failed to participate in numerous lawsuits

directed against them for conduct substantially similar to that alleged by Plaintiff.[1] As the court recognized in Derek Smith Law Grp., such prior conduct provides relevant context for determining whether the present default reflects an isolated oversight or a broader pattern of disregard for litigation obligations. 2025 WL 3296301, at *6.

Defendants' suggestion that the Late Stage entities' conduct should be considered separately from that of Mr. Follano is particularly disingenuous. Mr. Follano founded and controls the Late Stage entities, and in this very litigation, he coordinated a defense for himself and the four entity Defendants. (Opp. at 2-3.) Indeed, Mr. Lawlor's October 14 letter addressed the defense of all five Defendants, and local counsel ultimately appeared on behalf of all of them. (Dkt. 20; 35-1.) Moreover, Mr. Follano also accepted service on behalf of the entity Defendants. (Dkt. 6-10.) Mr. Follano cannot assume responsibility for defending the entities in this action while insisting that their history of disregarding judicial proceedings is wholly unrelated to his own conduct. (Opp. at 9.)

Against this background, Defendants' reliance on Mr. Lawlor's October 14 letter is particularly unpersuasive. All five Defendants were served on September

---

[1] Pursuant to Fed. R. Evid. 201, Plaintiff asks the Court to take judicial notice of the docket and filings in the related action Verska et al. v. Follano, No. 2:26-cv-11367 (D.N.J.), pending before this Court. See also Sturgeon v. Pharmerica Corp., 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020).

16, 2026, yet Mr. Follano waited until October 1 to notify Mr. Lawlor, who was familiar with his business and already represented him in similar lawsuits. (Lawlor Decl. ¶¶ 2, 17.) Although Mr. Lawlor learned of the lawsuit six days before the October 7 deadline, neither he nor Defendants answered or otherwise responded, nor did they seek an extension. Instead, Mr. Lawlor waited a full week after the deadline expired to contact Plaintiff's counsel. (Id. ¶ 4.) Mr. Lawlor's letter was, at most, a late, legally meaningless announcement that Defendants intended to seek arbitration.

Defendants' delay tactics only continued after default was entered. Although local counsel was retained on October 22, counsel did not contact Plaintiff's counsel until October 29 and did not enter an appearance or request an adjournment until November 3, after the deadline to oppose the motion for default judgment had expired. (Id. ¶¶ 11-13.) Thus, even after securing the representation they claim was the obstacle to responding, Defendants continued delaying the procedural steps necessary to defend this action.

The circumstances here bear little resemblance to the case Defendants cite, Farnese v. Bagnasco, 687 F.2d 761, 764-65 (3d Cir. 1982), where the defendant resided abroad, experienced substantial difficulties obtaining counsel, and was hospitalized when the response was due. Defendants offer no comparable explanation for their inaction. Nor does Mr. Lawlor's preplanned vacation, which

began on October 16, explain why Defendants failed to respond or seek an extension before October 7.

Defendants portray these events as mere scheduling difficulties, but the surrounding circumstances reveal a broader pattern of disregard for litigation obligations. Cf Derek Smith Law Grp., 2025 WL 3296301, at *6. The Late Stage entities repeatedly failed to participate in proceedings concerning investors' claims, Defendants ignored Plaintiff's requests for information regarding his investments, and all five Defendants failed to respond to this action despite having notice and access to counsel. Their continued delays, even after retaining local counsel, demonstrate conduct exceeding mere negligence. Accordingly, this factor weighs decidedly in favor of default judgment, which alone can be sufficient for denial of Defendants' motion.

**B. Plaintiff Would Be Prejudiced by Setting Aside the Defaults.**

Prejudice is established when a plaintiff's ability to pursue the claim has been hindered by "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment[.]" Feliciano v. Reliant Tooling Co., 691 F.2d 653, 657 (3d Cir. 1982). In determining whether such prejudice exists, the Third Circuit has considered a defendant's broader history of failing to respond to claims where that conduct impaired the plaintiff's ability to identify and pursue responsible parties. Hritz, 732 F.2d at 1182–83. Importantly,

courts in this District and the Third Circuit routinely recognize that a defendant's history of disregarding judicial proceedings and dissipating assets may establish an increased potential for fraud or collusion sufficient to establish prejudice. See, e.g., Sadis & Goldberg, LLP v. Banerjee, No. 19-1682, 2020 WL 4350238 (W.D. Pa. July 28, 2020).

Here, Defendants' delay threatens Plaintiff with real and irreparable prejudice. The Complaint alleges not a mere failure to pay, but that Mr. Follano treated the Late Stage entities as his personal instrumentality, setting the prices, directing investor funds "including to himself and to entities he owned or controlled," commingling those funds, and leaving the entities unable to satisfy what they owed. (Compl. ¶¶ 68, 72-75.) Defendants have already diverted and commingled the very funds at issue and would have likely ignored this action had Mr. Miller not named Mr. Follano personally, and there exists no reason to believe that the assets from which Mr. Miller must recover will still be there when the case is resolved. Precisely as in Banerjee, here, it would reward "obfuscation tactics" to let that delay continue while assets are shifted beyond Plaintiff's reach.

That risk is most concrete as to Mr. Miller's SpaceX holdings. (Compl. ¶ 43.) The transfer restrictions on those shares are set to expire on December 8, 2026, after which they can be sold into the public market and moved beyond tracing or recovery. Defendants are keenly aware of the importance of this date

and are aware that every week they can delay narrows the window in which Mr. Miller, and the dozens of Plaintiffs nationwide attempting to recover their SpaceX shares from Defendants, can trace and recover the specific shares they purchased.

Once the relevant restricted shares become eligible for public-market trading, however, further sales are very likely to place those shares into the hands of unidentified purchasers through market intermediaries, thereby frustrating Plaintiff's ability to trace the particular holdings and their proceeds. The threatened impairment therefore concerns proof of Defendants' alleged liability, not merely proof of Plaintiff's losses, as Defendant have argued.

## C. Defendants Have Failed to Establish a Meritorious Defense.

Far from establishing a meritorious defense, Defendants merely offer a catalog of partial, inchoate arguments that never reach the heart of this case. These arguments fall far short of the complete defense required in the Third Circuit and preclude Defendants' attempt at escaping default judgment.

The "threshold question" in determining whether default judgment is appropriate is whether the defendant has asserted a meritorious defense. U.S. v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). In the Third Circuit, "[t]he showing of a meritorious defense is accomplished when [the] 'allegations of defendant's answer...would constitute a **complete defense** to the action.'" Sunoco, Inc. (R & M) v. Glob. Recycling & Demolition, LLC, 300

F.R.D. 253, 257 (E.D. Pa. 2014) (emphasis supplied) (quoting $55,518.05, 728 F.2d at 195). A defense qualifies as "complete" only where the defendant supports it with "specific facts beyond simple denials or conclusionary statements" that, if established at trial, "would constitute a complete defense to the action." Mrs. Ressler's Food Prods. v. KZY Logistics LLC, 675 F. App'x 136, 140-41 (3d Cir. 2017). Indeed, "there would be no point in setting aside the default judgment...if [the defendant] could not demonstrate the possibility of his winning." $55,518.05, 728 F.2d at 195.

In Derek Smith, for example, the defendant alleged that certain claims were time-barred and that the fraud count was not pleaded with particularity, but he offered no defense at all to the plaintiff's breach of contract count, which independently accounted for a substantial portion of the damages. 2025 WL 3296301, at *3-4. That omission was fatal because the defendant "allege[d] only a partial defense," and the court held he had not shown allegations that, "if established on trial, would constitute a complete defense to the action." Id. at *5 (quoting $55,518.05, 728 F.2d at 195).

Here, measured against that standard, Defendants come nowhere close. This case reduces to a core allegation Defendants cannot and do not dispute—Plaintiff is owed specific shares in specific pre-IPO companies that Defendants have refused to deliver. Defendants offer no defense of any kind to that core allegation.

Instead, Defendants make a series of what are designed to look like technical defenses to each of the individual claims, none of which could constitute a complete defense to recovery. What Defendants have presented is thus the *sine qua non* of a partial defense as that term is defined by courts in the Third Circuit.

First, Defendants contend that Plaintiff has not pleaded fraud with the particularity Rule 9(b) requires. (Opp. at 4-5.) That argument fails on its own terms. Rule 9(b) requires only that a plaintiff plead the circumstances constituting fraud with enough specificity to place the defendant on "'notice of the precise misconduct with which they are charged[.]'" Marks v. Struble, 347 F.Supp.2d 136, 146 (D.N.J. 2004) (internal citations omitted). A plaintiff need not plead the "date, place or time" of the fraud, so long as it uses some "'alternative means of injecting precision and some measure of substantiation into [its] allegations.'" Id.

Here, the circumstances constituting fraud are highly documented–Mr. Miller's claims rest on the written materials attached to the Complaint, which constitute a "binding record of what each investor had purchased and owned." (Compl. ¶ 37.) Those documents very clearly supply the particularity Rule 9(b) requires: the speaker (Late Stage and Fund VIII, acting through Follano, who executed or authorized the acceptance letters "on behalf of Late Stage" (id. ¶¶ 30, 44, 71, 78); the representation (that each investment would purchase a stated number of shares at a stated price, with no upfront fees or markups) (id. ¶¶ 32-36,

43); the time and place (the dated acceptance letters, subscription booklets, and the investor portal) (id. ¶¶ 28-31, 43); and the manner in which the representations were false (Mr. Miller was credited with fewer shares at higher prices than his confirmations reflected, and the shares have never been delivered) (id. ¶¶ 46, 64, 66-67). Any additional factual detail regarding Defendants' fraud is information they alone hold, which relaxes the Rule 9(b) particularity standard. Cf. In re Rockefeller Ctr. Props., 311 F.3d 198, 216 (3d Cir. 2002) ("[I]n applying Rule 9(b) courts should be 'sensitive' to situations . . . where certain facts are "peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed.").

Second, Defendants argue that the operating agreement authorized affiliate markups, and therefore, the existence of a markup does not establish concealment. (Opp. at 5.) Even accepting that incorrect premise, it is not a defense to this action. Whether the agreement permitted Late Stage to price shares at a markup says nothing about the conduct at the heart of Plaintiff's claims—that Late Stage, by and through Mr. Follano, credited him with fewer shares than the confirmations reflected, and then failed to deliver any shares, or their value, at all. A contractual permission to mark up the price of shares that are actually delivered is no answer to the Complaint's allegations that the shares were **never even delivered**. In any event, at most, the markup provisions may bear on the measure of damages, but a

defense that only goes to the "mitigation of damages" is "not a complete defense" to liability.[2] Mike Rosen & Assocs. v. Omega Builders, Ltd., 940 F. Supp. 115, 119 (E.D. Pa. 1996).

Next, Defendants recast the conversion claim as a contract debt, relying on authority that a claim for money owed under a contract is not conversion. (Opp. at 7.) In this case, however, Plaintiff seeks specific, identifiable property: the pre-IPO shares identified by company, price, and quantity in his acceptance letters, which Defendants took custody of for his benefit and then diverted. (Compl. ¶¶ 132-145, 43.) New Jersey law recognizes that a "document evidencing stock ownership [] is considered tangible personal property," and therefore, the ownership and possession rights underlying the conversion claim is sufficiently identifiable. Registrar & Transfer Co. v. Dir., Div. of Tax'n, Dep't of Treasury, 166 N.J. Super. 75, 80 (App. Div. 1979).

Defendants then invoke the economic-loss doctrine against Plaintiff's misrepresentation claim. (Opp. at 7.) That doctrine is inapplicable to this case. New Jersey's economic-loss doctrine bars only tort claims that duplicate a party's contractual expectations; it does not bar fraud in the inducement, which rests on

[2] Similarly, Defendants' argument that the unjust-enrichment claim is barred because a valid contract governs their investments (Opp. at 6) is self-defeating, as the Complaint pleads unjust enrichment in the alternative, as is expressly permitted by Rule 8. See Fed. R. Civ. P. 8(d)(2).

misrepresentations extrinsic to the contract's performance. Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557 (D.N.J. 2002). Defendants all but concede that point, invoking the doctrine only "*to the extent* the alleged misrepresentations concern contractual performance rather than an independent duty." (Opp. at 7) (emphasis supplied).

Defendants then point to various provisions in the agreements, thinly and unsuccessfully arguing that they may provide a contractual defense to the allegations of the Complaint. (Opp. at 7-8.) These provisions defeat nothing. The liability-limitation provision Defendants cite–Section 5.5.2–expressly excepts "fraud, willful misconduct[, and] gross negligence," which is precisely the conduct Plaintiff alleges, so it cannot act as a bar to the Complaint. Nor can the purported fiduciary duty waiver bear the weight Defendants attempt to place on it because Delaware law permits an LLC agreement to restrict or eliminate fiduciary duties, but it "may not eliminate the implied covenant of good faith and fair dealing" or exculpate a "bad-faith violation" of such duties. See 6 Del. C. § 18-1101(c), (e).

Next, Defendants assert that Mr. Miller's New Jersey securities claim may be time-barred. (Opp. at 8.) Even assuming that allegation would defeat the securities count, it does not help Defendants. The relief Mr. Miller seeks rests largely on his conversion, fraud, and contract claims, to which Defendants offer no defense. See Derek Smith Law Grp., 2025 WL 3296301, at *5. Even if it were

successful, the limitations defense would nevertheless leave the claims that support the relief Plaintiff seeks in place, and thus gives Defendants no "possibility of [] winning." $55,518.05, 728 F.2d at 195.

Finally, Defendants' purported invocation of the arbitration clause is not a defense to the merits at all and is completely untenable on its own facts. Whether a dispute belongs in arbitration is a question of forum, not a "complete defense to the action," and it does nothing to show that Defendants could prevail on Mr. Miller's claims—which is what the meritorious defense factor requires. See $55,518.05, 728 F.2d at 195. As in $55,518.05, Defendants' lack of meritorious defense is independently sufficient for denial of its motion to open default. See id. at 197.

## III. CONCLUSION

For each of the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion and enter default judgment against Defendants.

Dated November 13, 2026.
Respectfully submitted,
*/s/ Gregory Byrnes*

Gregory Byrnes
Joseph Ruta
ANDERSON LAW
104 W 27th Street, 11th Floor
New York, NY 10001
jruta@lawnynj.com
Gregory@andersonlaw.nyc

F. Skip Sugarman (pro hac vice)
skip@sugarman-law.com
Sophie Degani (pro hac vice)

sophie@sugarman-law.com
Jadyn Taylor Dixon (pro hac vice forthcoming)
jadyn@sugarman-law.com
SUGARMAN LAW, LLP
154 Krog Street NE, Ste. 190
Atlanta, GA 30307
(404) 495-4811